IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MELANIE SILVA,

       Plaintiff,

vs.                                                                                                       No. CIV 96-1659 MV/LFG

SMITH'S FOOD AND DRUG CENTERS, INC.,

       Defendants.

### MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment, filed February 24, 1998 **[Doc. No. 15]**. The Court, having considered the responsive pleadings, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **granted in part** and **denied in part**.

### Background

Ms. Silva has alleged in her complaint that she has been an employee of Smith's Taos, New Mexico store since 1991. During that time Ms. Silva, who until early in 1997 was the manager of the seafood department, alleges having been sexually harassed starting late in 1991 by a co-worker, Mr. Tomas Rael, through sexual commentary, repeated unconsented touching, obscene gestures and the placing of foul and sexually suggestive objects in her work space. Ms. Silva contends having reported some of this conduct for the first time in 1993 to the acting manager of the meat department, Mr. Dave Medina, and shortly thereafter to the manager of the department, Mr. Jesse Baca. In an

affidavit which Ms. Silva has submitted with her pleadings, Mr. Medina corroborates Ms. Silva's version of events with respect to her reporting the alleged harassment. Ms. Silva claims that despite her conversations with supervisors, Mr. Baca did not act and the harassment continued until July, 1995, when Mr. Medina reported it to the store director, Mr. Carlos Tapia. Ms. Silva states that on July 20, 1995, Mr. Rael and Mr. Baca came to her house while she was on maternity leave to discuss the sexual harassment charges. Although Ms. Silva did not speak to either Mr. Rael or Mr. Baca, she explains that this action prompted her to meet with Mr. Tapia on July 22, 1995. At Mr. Tapia's request, Ms. Silva prepared a handwritten letter to him on July 22, 1995 documenting the circumstances of the alleged harassment. On July 29, 1995, Smith's held a counseling session with Mr. Rael where Mr. Tapia gave him a warning notice detailing the accusations against him. On August 18, 1995 Ms. Silva filed a charge with the Equal Employment Opportunity Commission, and on August 30, 1996 the EEOC issued a right-to-sue letter. Ms. Silva claims that the harassment continued on her return from maternity leave, and that on August 11, 1996 she once again reported harassment to Mr. Tapia in a conversation which she alleges Mr. Rael observed. Ms. Silva states that the very next day, on August 12, 1996, Mr. Rael left a cut-off piece of meat resembling the male anatomy or a condom in her work area when he closed the seafood case for the day, which the parties call the "gross piece of meat" incident. When Ms. Silva requested from the current store manager, Mr. Richard Godfrey, that she not be scheduled to work with Mr. Rael, he allegedly answered that "[t]hey can make the schedule the way they want, you know, you're the one with the problem." This litigation followed.

Ms. Silva's claim is essentially two-pronged. In addition to asserting continuing sexual harassment since 1991 and Smith's lack of prompt remedial action in 1993, she also alleges that

Smith's has retaliated against her for reporting the harassment and seeking relief. According to Ms. Silva, this retaliation consisted of scheduling her to work alone with Mr. Rael in the meat department, intentionally ignoring and discrediting her allegations of harassment on the grounds that they could not be proven, reducing her work hours while occasionally requesting that other employees work overtime hours, threatening her with false discipline, and closing the seafood department at the store, thereby forcing her to accept a lower paying position in the delicatessen department.

While Smith's first denied that harassment ever took place, it has focused its summary judgment motion on two points of law. First, Smith's claims that it took prompt remedial action upon Ms. Silva's providing notice to Mr. Tapia, and that as a matter of law Ms. Silva's reports to Mr. Medina and Mr. Baca, as well as many of the alleged incidents of harassment, can not form the basis for Ms. Silva's claim because they occurred outside the EEOC filing limitations period.

Second, Smith's claims that also as a matter of law, Ms. Silva's retaliation claim must fail. Smith's argues that none of the actions taken with respect to Ms. Silva were adverse, that Ms. Silva can not prove a causal connection between her protected conduct and those actions, and that it has brought forth a legitimate non-discriminatory reason for her reduction in hours and the closing of the seafood department. Through an affidavit Mr. Kevin Slowey, Smith's personnel director for New Mexico and Texas, explains that Ms. Silva's reduction in hours during certain times in 1996 was the result of the seafood case's not generating enough sales to support a full-time position. Mr. Slowey's affidavit, however, is silent with respect to Ms. Silva's allegation that Smith's asked other employees to work overtime while simultaneously reducing Ms. Silva's hours. Mr. Slowey further states that Smith's closed the seafood department in February, 1997 also because of inadequate sales. Consequently Smith's reassigned Ms. Silva, but could not place her in the meat department, with

3

comparable pay, because of seniority provisions in Smith's collective bargaining agreement with its employees.  Smith's also argues that none of the other alleged acts it took, such as scheduling Ms. Silva to work with Mr. Rael, rise to the level of adverse employment action, and therefore are not retaliatory.

## Discussion

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir. 1997), cert. denied, 118 S.Ct. 342 (1997).  Materiality of facts in dispute, if any, is dependent upon the substantive law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and summary judgment will not lie "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  The Court therefore looks to the substantive law of sexual harassment and retaliation in deciding whether this action should go forward.

Smith's does not dispute here that Mr. Rael's conduct up until 1993, as alleged by Ms. Silva, was sufficiently severe or pervasive to alter the conditions of Ms. Silva's employment and create an abusive working environment. See Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1418 (10th Cir. 1993), citing Meritor Savings Bank v. Vinson, 477 U.S. 57, 65 (1986).  Rather, Smith's claims that the events that took place prior to the 300 day time limitation for filing an EEOC claim are time barred and can not constitute part of a continuing course of discrimination.

4

The Tenth Circuit has explained that a continuing course of discrimination can exist either from a series of related acts, or from a company-wide policy of discrimination. Purrington v. University of Utah, 996 F.2d 1025, 1028-30 (10th Cir. 1993). The series of related acts principle depends upon an analysis of several nonexclusive factors, including:

> (i) subject matter–whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence–whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

Martin, 3 F.3d at 1415.

The continuing violation doctrine is rooted in equity, which dictates that "the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." Id. n.6.

There is no doubt, and indeed no argument from Smith's, that Mr. Rael's alleged conduct meets the first two factors of Martin. Rather, Smith's strenuously claims that the 1993 incidents are time barred because in reporting them to Mr. Medina and Mr. Baca, Ms. Silva was clearly showing her awareness that her right to a work place free from sexual harassment had been violated. The Court agrees. Under the series of related acts theory of the existence of a continuing course of discrimination, Ms. Silva's speaking to Mr. Medina, the acting meat manager, and Mr. Baca, the meat manager, who were both her supervisory employees, shows that she was aware of the need to assert her rights with respect to Mr. Rael's conduct. Pursuant to Martin, any harassment acts occurring over 300 days before the filing of Ms. Silva's EEOC complaint would not be actionable.[1]

---

[1] Ms. Silva argues that under Martin, the court should not place undue importance on the permanence factor. Martin does seem to circumvent the issue of permanence in that case, explaining that the totality of the harassment Ms. Martin had faced allowed her to survive summary judgment on the statute of limitations issue:

Neither can Ms. Silva prevail on an equitable tolling claim. Although Smith's has not rebutted Ms. Silva's and Mr. Medina's claims that Mr. Baca took no action despite promising in 1993 that he would correct Mr. Rael's conduct, under Tenth Circuit law, the Court can not toll the statute of limitations in this case. Equitable tolling, which Ms. Silva urges the Court to find based on Mr. Baca's empty promise, can only follow if Smith's engaged in active deception which caused Ms. Silva's EEOC filing to be untimely. Purrington, 996 F.2d at 1030. Ms. Silva has not presented any evidence of active deception here. Thus, although Mr. Baca had actual knowledge of Ms. Silva's complaints in 1993, and was remiss in not acting on them, the Court can not on the facts presented so far toll the EEOC filing limitation.

Despite concluding that Ms. Silva's case does not meet the Martin test, the Court will allow her sexual harassment claim to proceed to trial, for the Court finds that Ms. Silva has sufficiently alleged the existence of a discrimination practice in Smith's Taos store to survive summary judgment. Purrington shows that a continuing course of discrimination may exist when there is evidence of a pervasive, institutionalized system of discrimination which "typically involves discrimination through an employer's policies or practices." Purrington, 996 F.2d at 1029. An employer's refusal to correct or rectify discrimination may constitute a continuing violation. Id., citing Ligon v. Frito-Lay, Inc., 82 F.R.D. 42, 48 (N.D. Tex. 1979); Marlowe v. Fisher Body, 489 F.2d 1057 (6th Cir. 1973). Smith's

---

> The third factor of permanence is more difficult for Martin. Certainly, some of the events, including the rape, should have been reported at the time they occurred. She allowed this sexual harassment to continue for a long time before she filed a complaint with the EEOC. However, given the analysis under the first two factors, we believe Martin has shown enough to avoid summary judgment on the statute of limitations issue. The district court will, of course, be free to evaluate these factors in light of the evidence as it develops at trial.

Martin, 3 F.3d at 1416.
The court of appeals seems to apply an amorphous reading of its own factors, where the outcome of the analysis would depend in part on the severity of the alleged conduct of harassment. The Court declines to engage in this indeterminate analysis, and reads the Martin factors as they are set out.

does not deny that its managerial employee, Mr. Baca, did nothing in 1993 despite being on clear notice of Mr. Rael's conduct.  And although store director Tapia reprimanded Mr. Rael, Smith's management continued to schedule Mr. Rael to work alone with Ms. Silva, particularly under the tenure of current store director Richard Godfrey, who has shown no interest in helping Ms. Silva in avoiding situations where she could be subjected to further harassment from Mr. Rael.  While Smith's undisputably has an anti-discrimination policy in place, therefore, there remains a genuine issue of material fact as to whether Smith's practices may constitute evidence of a store-wide policy of discrimination.

   Moreover, Smith's argues that once it had notice, through store director Tapia, of Ms. Silva's allegations it took such prompt remedial action as to avoid Title VII liability.  Ms. Silva does not deny that Smith's took prompt action in July, 1995, namely that it held a meeting with Mr. Rael and placed a warning in his file.  Ms. Silva does claim, however, that the harassment by Mr. Rael continued into 1996, and that in essence Smith's 1995 corrective actions were insufficient in stopping Mr. Rael's offensive conduct.

   Despite having investigated the August 1996 "gross piece of meat" incident, Smith's does not provide the Court with the result of that investigation or mention whether it took any action as a result of its investigation.  Instead, Smith's only argues that Ms. Silva can not, on that issue, prove that Mr. Rael harassed her on that day.  Consequently, there exists a disputed issue of material fact as to whether Smith's took prompt remedial action, from July 1995 through 1996, that ended the alleged harassment of Ms. Silva by Mr. Rael, or whether that action was "reasonably calculated to end the harassment."  Katz v. Dole, 709 F.2d 251, 256 (4th Cir. 1983); Campbell v. Board of Regents of the State of Kansas, 770 F. Supp. 1479, 1488 (D. Kan. 1991).   Regardless of the continuing

nature of the violations, Ms. Silva's claim may properly go to trial on the issue of Smith's response to Mr. Rael's conduct and its reasonableness.

Where the Court will grant partial summary judgment, however, is on Ms. Silva's retaliation claim. Ms. Silva's chief allegation with respect to retaliation is that Smith's both reduced her hours and eventually transferred her to a lesser-paying job after closing her department. In addition, Ms. Silva claims that scheduling her to work alone with Mr. Rael in the meat department, intentionally ignoring and discrediting her allegations of harassment on the grounds that they could not be proven, and threatening her with false discipline constituted retaliatory action on the part of Smith's.

Under the well worn burden shifting standard of McDonnell Douglas v. Green, 411 U.S. 792 (1973), which applies here, Berry v. Stevinson Chevrolet, 74 F.3d 980, 985 (10th Cir. 1996), a plaintiff must first establish a prima facie case of retaliation by showing "(1) protected opposition to discrimination; (2) adverse action by an employer contemporaneous with or subsequent to the employee's protected activity; and (3) a causal connection between such activity and the employer's action." Purrington, 996 F.2d at 1033; Berry, 74 F.3d at 985. If a plaintiff meets this burden, then the defendant must produce a legitimate, non-discriminatory reason for the adverse action. Id. at 986. The plaintiff, who always retains the burden of proof, must then show that this reason is pretextual to prevail on the retaliation claim. Id.

Smith's does not dispute, as it can not, that Ms. Silva engaged in protected activity or that Smith's actions in reducing Ms. Silva's hours and closing the seafood department were adverse. Thus the only impediment to establishing a prima facie case Ms. Silva faces, with respect to the reduction in her hours and her transfer and cut in pay, is that of causation. There Smith's argues that its reduction of Plaintiff's hours in 1996 and the closing of Smith's seafood department in February,

1997 are not so close in time to Ms. Silva's 1995 filing of her EEOC claim as to constitute retaliation. Smith's argument ignores the fact that Ms. Silva filed the complaint in this case in November, 1996. Further, Smith's hours reduction and seafood department closing actions in late 1996 and early 1997 could be interpreted as retaliation for the filing of that complaint.

The Tenth Circuit generally requires close temporal proximity between protected activity and adverse employment action in order to satisfy the causation prong of a prima facie retaliation case. In Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997), the court found a four-month gap too long, and seemed to insist on a considerably shorter time.  Id.  Here neither party has provided the Court with enough detail regarding Ms. Silva's transfer from the seafood department. Depending on the length of time required to close the seafood department at Smith's Taos store, the February, 1997 closing of the seafood department may or may not be, under Conner, temporally related to the November 26, 1996 filing of the complaint in this Court.  Likewise, neither party has provided the Court with sufficiently specific information on Smith's reduction of Ms. Silva's hours to enable the Court to make an informed decision regarding the temporal proximity of adverse action. Without this information the Court can not make an informed judgment on whether Ms. Silva can meet her burden of showing causation.  The Court finds, therefore, that Ms. Silva has not met her burden of bringing forth a prima facie case of retaliation for the reduction of her work hours or the closing of the seafood department.

Smith's alleges that, even had Ms. Silva succeeded in her retaliation claim, it has met its burden of articulating legitimate, nondiscriminatory reasons for reducing her hours and closing the seafood department.  Smith's is only partly right.  While Mr. Slowey has explained that Smith's reduced Ms. Silva's hours and closed the seafood department because of inadequate sales, and that

Smith's was constrained by its collective bargaining agreement in transferring Ms. Silva to a position with comparable pay, Smith's has not addressed at all Ms. Silva's contention that her hours were reduced while others were being asked to work overtime.

With respect to the other alleged retaliatory actions, scheduling Ms. Silva to work with Mr. Rael, intentionally ignoring and discrediting her allegations of harassment on the grounds that they could not be proven, and threatening her with false discipline, the Court must first decide if those acts, which Smith's does not contest, are sufficiently severe to constitute adverse employment action. The Court finds that while scheduling Ms. Silva to work alone with Mr. Rael can constitute retaliation, Ms. Silva's other allegations are barred as a matter of law.

To be actionable under Title VII, alleged retaliatory action must be such that it relates to the terms and conditions of employment. Conner, 121 F.3d at 1395 n.4 (10th Cir. 1997). Smith's does not deny that its managers scheduled Ms. Silva to work with Mr. Rael. The Court finds that here a jury could reasonably conclude that Smith's action was retaliatory by being calculated, in a very direct way, to signal the futility of complaining about harassment, and that being forced to work alone with the man whom she accused of repeated sexual harassment, affected the conditions of Ms. Silva's employment. Thus, because a court should define adverse employment action liberally, Berry, 74 F.3d at 986, and because adverse action "is not limited solely to loss or reduction of pay or monetary benefits," Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir. 1996), quoting Collins v. State of Illinois, 830 F.2d 692, 703 (7th Cir. 1987), the Court finds that with respect to this issue Ms. Silva has shown enough to survive summary judgment.

On Ms. Silva's other allegations, that she was subjected to false discipline and that Smith's intentionally ignored and discredited her harassment concerns on the grounds that they could not be

10

proven, the Court will grant summary judgment. Although the Tenth Circuit has not precisely ruled on this issue, the Court is guided by other trial courts in the circuit which, following <u>Smart</u>, would find that the conduct which Ms. Silva alleges here does not rise to the level protected by Title VII. <u>See</u> <u>Jeffries v. State of Kansas, Dep't of Social and Rehabilitation Services</u>, 946 F. Supp. 1556, 1567 (D. Kan. 1996); <u>Seely v. Runyon</u>, 966 F. Supp. 1060, 1064 (D. Utah 1997); <u>Penry v. Federal Home Loan Bank of Topeka</u>, 970 F. Supp. 833, 841 (D. Kan. 1997). In <u>Jeffries</u> action that was not retaliatory included severely reprimanding the plaintiff for going outside of the chain of command, refusing to talk to the plaintiff unless conversations were tape recorded, stating to the plaintiff that she broke her co-workers' trust, and threatening not to renew her annual contract. <u>Jeffries</u>, 946 F. Supp. at 1566-67. In <u>Seely</u> the court declined to find, because of their lack of consequence, that threats of removal, harassment, and intimidation could be adverse employment action. <u>Seely</u>, 966 F. Supp. at 1064. Finally, in <u>Penry</u> the court ruled that close monitoring of break times, threats of termination for having gone outside the chain of command, and a statement of "well, there's one down and two to go," referring to the resignation of one of the plaintiff's co-workers, did not amount to conduct which would be actionable as adverse employment action. <u>Penry</u>, 970 F. Supp. at 841.

      Here Ms. Silva has alleged only conduct which, while unfair and inappropriate, is not an adverse employment action under Title VII. <u>See</u> <u>Jeffries</u>, 946 F. Supp at 1567. Threatening to "write up" Ms. Silva if she does not complete tasks and ignoring her concerns about Mr. Rael, stating that she is "the one with the problem," are not retaliatory under Title VII.

      The Court concludes, therefore, that Ms. Silva's case may proceed to trial on both issues of sexual harassment and retaliation, but that Ms. Silva may present only Smith's scheduling her to work

alone with Mr. Rael as the basis of her retaliation claim.

_____
UNITED STATES DISTRICT JUDGE

April 20, 1998

Counsel for Plaintiff

Ray R. Twohig Jr., Esq.
8998 Rio Grande Blvd, NW
Albuquerque, NM 87114
(505) 898-0400
Fax: 898-0400

Counsel for Defendant

Thomas L. Stahl , Esq.
Scott D. Gordon , Esq.
Rodey, Dickason, Sloan, Akin & Robb
PO Box 1888
Albuquerque, NM 87103
(505) 765-5900
Fax: (505) 768-7395